UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:26-cv-03844

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,

Plaintiff,

v.

THE GEO GROUP, INC.

Defendant.

---

**THE GEO GROUP, INC.'S NOTICE OF REMOVAL**

---

Defendant, The GEO Group, Inc. ("GEO"), by and through its undersigned attorneys hereby removes this action from the State of Colorado, District Court in Adams County, Case No. 2026CV31629, to the United States District Court for the District of Colorado. Plaintiff, the Colorado Department of Public Health and Environment ("CDPHE"), based on alleged public health concerns, seeks an order requiring GEO to provide it with, *inter alia*, documents that are expressly the property of the federal government, despite CDPHE's knowledge that these documents are legally the property of the United States government, not GEO. Moreover, to the extent that CDPHE also seeks unfettered access to AIPC in connection with its investigation, it likewise knows that it is Immigration and Customs Enforcement ("ICE"), not GEO, that controls access to the Aurora ICE Processing Center ("AIPC"). Removal is proper pursuant to 28 U.S.C. §§ 1442 and 1446. In support of this Notice of Removal, GEO states the following:

## NATURE OF THE CLAIMS

1. Plaintiff initiated this civil action in the District Court in Adams County, Colorado, by filing a Complaint for Injunctive Relief ("Compl.") on August 19, 2026. A copy of the Complaint, including exhibits referenced therein, is attached hereto as Exhibit A.

2. Through the Complaint, Plaintiff alleges that GEO failed to provide access to AIPC or the requested records of federal immigration detainees, and hindered Plaintiff's attempt to investigate media reports of tuberculosis at AIPC.

3. On August 20, 2026, Plaintiff filed a Motion for Preliminary Injunctive Relief, which is attached hereto as Exhibit B. Through that motion, Plaintiff seeks an order compelling GEO to comply with CDPHE's investigation, including providing Plaintiff with documents and records that Plaintiff knows are the property of the United States government and cannot be disclosed without the consent of the federal government.

4. AIPC is a secure federal immigration detention facility. GEO provides secure residential care support at the AIPC pursuant to a federal contract with ICE, which Plaintiff acknowledges. (*See* Compl., ¶ 8.)

5. Consistent with the requirements of GEO's contract with ICE for secure residential services at AIPC, ICE exercises exclusive control over all access to secure portions of AIPC. No one, from detainees to GEO employees to vendors, is allowed to enter the secure portions of AIPC without the express authorization of ICE.

6. All requests for access to secure portions of AIPC must obtain preclearance approval from ICE, including requests by federal and state employees, as well as GEO employees. GEO is without authority to provide access to the secure portions of AIPC absent

ICE clearance and approval. Indeed, the Complaint acknowledges that the contract requires AIPC to be operated in accordance with ICE's Performance-Based National Detention Standards (PBNDS). (*See* Compl., ¶ 63.) The PBNDS expressly provides that ICE approval is necessary for access to AIPC. *See* PBNDS at 403 (requiring ICE approval for law enforcement officials requesting visits with detainees); *id.* at 448 (requiring prior approval of the ICE Field Office Director for visits by any stakeholder, including intergovernmental entities).

7. In addition, consistent with the requirements of GEO's contract with ICE, all records, including those of detainees and concerning facility operations, "remain the property of the U.S. Government." (Compl., Ex. 1 at 44; *see also id.* at 89 ("The Contractor may not disclose information pertaining to ICE detainees to a third party without written permission from the COR").)[1]

8. On August 13, 2026, Plaintiff issued a Public Health Order demanding that GEO disclose records that are the property of the U.S. Government. (Compl., Ex. 6.) And CDPHE had previously demanded access to AIPC, which request is noted throughout the Complaint. (*See, e.g.*, Compl., Ex. 3.)

9. Accordingly, this case is removable on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

---

[1] The COR is the "Contracting Officer's Representative," which is defined as "Employees of the Government responsible for monitoring all technical aspects and assisting in administering the contract." (Compl., Ex. 1 at 24.) And the term "Government" is defined as "the United States Government." (*Id.* at 26.)

10. This Notice of Removal is timely. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable. 28 U.S.C. § 1446(b). GEO was served with the Complaint on August 20, 2026.

**JURISDICTION & VENUE**

11. Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set forth below under Grounds of Removal.

12. Venue is proper in the United States District Court for the District of Colorado, as the state court action, which is the subject of this removal petition, was filed with the Adams County District Court, where it is alleged that all parties are subject to personal jurisdiction.

**GROUNDS FOR REMOVAL**

13. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is removable to this Court by GEO pursuant to the provisions of 28 U.S.C. § 1442(a)(1) because Plaintiff's alleged right to relief necessarily depends on the resolution of a substantial question of federal law. "Federal officers, and their agents, may remove cases based on acts performed under the color of their federal office if they assert a colorable defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006); *see also Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-81 (7th Cir. 2012); *Equity Staffing Grp. Inc. v. RTL Networks, Inc.*, No. 13–cv–3510–WJM–KLM, 2014 WL 2566316, at *3 (D. Colo. June 6, 2014).

14. Title 28 U.S.C. § 1442(a)(1) "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction."

*Bailey v. Monsanto Co*., 176 F. Supp. 3d 853, 869 (E.D. Mo. 2016) (internal quotations and citation omitted). The words "or relating to" were added to the statute by Congress in 2011. This addition was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court." *Id.* (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015) (citing legislative history)).

15. The Supreme Court has mandated a generous interpretation of the federal officer removal statute in favor of removal. *Ruppel*, 701 F.3d at 1180 (the federal officer removal statute is not narrow or limited); *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969); *see also Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (noting that the Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal officer removal] statute." (internal citation omitted)).

16. At all relevant times, GEO was a "person(s)" within the meaning of 28 U.S.C. § 1442(a)(1). *Ruppel*, 701 F.3d at 1181 (finding that a corporate defendant was a "person"); *see also City of Brunswick v. Honeywell Int'l, Inc.*, --- F.4th ----2026 WL 2224648, at *11 (11th Cir. Aug. 3, 2026); *Fung v. Abex Corp*., 816 F.Supp. 569, 572 (N.D. Cal. 1992).

17. Plaintiff's claim against GEO is based solely on GEO's performance of its federal contract with ICE to provide secure residential services at the federal AIPC. GEO was acting under direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) when it communicated with CDPHE regarding its requests.

18. Because ICE, not GEO, denied CDPHE's requests for access to AIPC and denied its request for access to records of federal detainees at AIPC, GEO has colorable federal defenses to Plaintiff's claims.

19. Because GEO's interaction with CDPHE was in accordance with Congressionally mandated detention standards and its federal contractual requirements, GEO has colorable federal defenses to Plaintiff's claims.

20. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (a) demonstrate that it acted under the direction of a federal officer, (b) raise a colorable federal defense to plaintiff's claims, and (c) demonstrate a causal nexus between plaintiff's claims and the acts it performed under color of federal office. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Ruppel*, 701 F.3d at 1180-1181.

21. "[R]equiring a private contractor seeking federal officer removal to show a 'colorable' claim of state law preemption violates the fundamental principle that '[t]he officer need not win his case before he can have it removed.'" *Graves v. 3M Co.*, 17 F.4th 764, 773 (8th Cir. 2021) (*quoting Willingham*, 395 U.S. at 407).

22. "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010). "It is the sufficiency of the facts stated—not the weight of the proof presented—that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose

judicially created tolls on those who seek to travel on it. Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Id.* at 782-83; *see also United States v. Moll*, No. 22-cr-00266-NYW, 2023 WL 2042244, at *7 (D. Colo. Feb. 16, 2023) ("Section 1442(a)(1) does not require a finding that a defense will be successful for removal to be deemed appropriate; a 'colorable' defense need only be plausible." (quoting *Hawaii v. Broughton*, No. CR. 13-00415 HG, 2013 WL 3288381, at *5 (D. Haw. June 28, 2013))).

23. GEO raises colorable federal defenses to this action under the doctrine of "derivative sovereign immunity," under the "intergovernmental immunity doctrine," and under principles of federal preemption.

**A. Derivative Sovereign Immunity**

24. "The United States may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). It is therefore immune from suit unless a plaintiff can point to a statute that says otherwise. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016); *Mitchell*, 463 U.S. at 212 ("[T]he existence of consent is a prerequisite for jurisdiction."). Similarly, government contractors may not be sued for carrying out the sovereign's will. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20 (1940); *see generally Filarsky v. Delia*, 566 U.S. 377 (2012) ("[I]t should come as no surprise that the common law did not draw a distinction between public servants and private individuals engaged in public service in according protection to those carrying out government responsibilities."). That is because the government has an "unquestioned need to delegate [its] functions," and because "[i]mposing liability on private

agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).

25. Thus, "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (4th Cir. 2018). In *Campbell-Ewald*, the U.S. Supreme Court affirmed the two-prong *Yearsley* standard and explained it as follows: "Where the Government's 'authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress,' we explained, 'there is no liability on the part of the contractor' who simply performed as the Government directed." *Campbell-Ewald*, 577 U.S. at 167 (quoting *Yearsley*, 309 U.S. at 20-21).

26. As a result, GEO is immune from any suit for carrying out the sovereign's will and conveying CDPHE's request for disclosure of federal detainee records to ICE. GEO is also immune from suit for ICE's decision to deny the request (or any related request for access to the facility). *Yearsley*, 309 U.S. at 20.

**B. Intergovernmental Immunity-Direct Regulation**

27. The Supremacy Clause provides that the "Laws of the United States" made in pursuance of the Constitution "shall be the supreme Law of the Land." U.S. CONST. art. VI, cl.2. More than 200 years ago, in the foundational case of *McCulloch v. Maryland*, 17 U.S. 316 (1819), the Supreme Court recognized that this guarantee of federal supremacy would be meaningless if the federal government were not immune from regulation and taxation by the states. The Supreme Court held that the supremacy of the federal government within its legitimate sphere of action necessarily meant that the states had no power to interfere with a

constitutionally valid federal activity. *Id.* at 427-30. In line with *McCulloch*'s prohibition on state laws that "retard, impede, burden, or in any manner control, the operations" of the federal government, 17 U.S. at 436, a state law directly regulates the federal government—and is therefore unconstitutional—if it "involve[s] a direct, physical interference with federal activities . . . or some direct, immediate burden on the performance of the [federal] functions." *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 96 (1945). In assessing whether a state law substantially burdens federal operations, there is no distinction between state regulation of federal employees and state regulation of private contractors carrying out federal operations. In *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824), the Supreme Court declared that "the right of the State to control [a federal contractor's] operations, if those operations be necessary to its character, as a machine employed by the government, cannot be maintained." *Id.* at 867 (Marshall, C.J.).

28. Intergovernmental immunity forbids a state from substantially interfering with federal activity carried out by a private contractor, even where the activity occurs on private land. Plaintiff's demand that GEO turn over to CDPHE documents and records that are property of the federal government in connection with its investigation related to the conditions of and treatment provided at AIPC is unconstitutional because it attempts to directly regulate, control, and interfere with federal activities in violation of the Intergovernmental Immunity Doctrine.

Indeed, Plaintiff was directly informed that both DHS and CDC were handling the health-related issues at AIPC.[2]

**C. Intergovernmental Immunity-Impermissible Discrimination**

29. The United States Supreme Court recently confirmed that the doctrine of Intergovernmental Immunity prohibits state laws that either "regulat[e] the United States directly or discriminat[e] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (emphasis in original) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). A state law impermissibly discriminates against the federal government or its contractors if it "single[s them] out" for less favorable "treatment," *Washington v. United States*, 460 U.S. 536, 546 (1983), or if it regulates them unfavorably on some basis related to their governmental "status," *North Dakota*, 495 U.S. at 438. Preventing discrimination against the federal government or those with whom it deals lies at the heart of the Constitution's intergovernmental immunity doctrine. *United States v. Washington*, 596 U.S. at 840.

30. While state law permits CDPHE to investigate the causes of diseases such as tuberculosis, *see* C.R.S. § 25-1.5-102(1)(a)(I), here CDPHE was aware that (1) DHS and CDC were actively involved in monitoring and testing federal detainees and (2) that there were no

---

[2] In addition, Plaintiff failed to inform the Court that ICE separately acknowledged in July that there were no active cases of tuberculosis at that time, and that AIPC had complied with all federal CDC guidelines and policies on communicable diseases.

active or suspected cases of tuberculosis in AIPC. Nevertheless, CDPHE has claimed it needs to investigate based on an unsubstantiated media report.[3] (Compl., ¶¶ 94-95.)

31. In contrast, during the COVID-19 pandemic, CDPHE did not engage in similar investigations. Indeed, prison conditions were routinely criticized, with more than 16,000 inmates reportedly contracting the virus and at least 32 dying from it.[4]

32. Moreover, while it is true that GEO has in the past, and with ICE approval, worked with public health officials in Colorado to conduct disease control investigations, the nature and scope of the requests being made now are different in kind and tone, and reflect discriminatory enforcement when compared to other entities that do not house federal immigration detainees.

33. Accordingly, Plaintiff's attempt to enforce the Public Health Order is unconstitutional and invalid because it impermissibly discriminates against the federal government and its contractors. *United States v. Washington*, 596 U.S. at 837.

**D. Federal Field Preemption**

34. Federal immigration law provides that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," and "[w]hen United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the [Secretary] may expend . . .

---

[3] At the same time as this unverified report in the Guardian, cited by Plaintiffs, ICE stated that there were no active cases of tuberculosis at that time.

[4] J. Gilbert, *The Pandemic Behind Bars*, The Colorado Health Institute (dated Jan. 28, 2021, updated Mar. 20, 2023), *available at:* https://www.coloradohealthinstitute.org/research/pandemic-behind-bars

amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for detention." 8 U.S.C. § 1231(g)(1). To effectively arrange for appropriate places of detention for removal aliens, Congress further granted the Secretary authority "to make contracts . . . as may be necessary and proper to carry out [his] responsibilities," 6 U.S.C. § 112(b)(2), including contracts with private parties. Congress further authorized the Secretary, in his "reasonable discretion," to carry out the immigration enforcement activities of the Department of Homeland Security "through any means," including "through contracts, grants, or cooperative agreements with non-Federal parties." 28 U.S.C. § 530C(a)(4). Similarly, Congress has also authorized the Secretary to "enter into contracts and other agreements, of any reasonable duration, for detention or incarceration space or facilities, including related services, on any reasonable basis." 18 U.S.C. § 4013 note "Contracts for Space or Facilities" (emphasis added).

35. Federal statutory directives and a comprehensive set of federal detention standards known as the Performance Based National Detention Standards ("PBNDS") govern the operation of private detention facilities. The current PBNDS were implemented and incorporated into ICE contracts at the direction of Congress. The Joint Explanatory Statement and House Report 114-668, which accompany the Fiscal Year (FY) 2017 Department of Homeland Security (DHS) Appropriations Act (Pub. L. 115-31), evince this direction. The Joint Explanatory Statement says: "Within 45 days after the enactment of this Act, ICE shall report on its progress in implementing the 2011 Performance Based National Detention Standards, including the 2016 revisions…." 163 Cong. Rec. H3812 (2017). House Report 114-668 states: "Within 45 days after the date of enactment of this Act, ICE shall report on its progress in implementing the 2011 [PBNDS] and requirements related to [PREA], including a list of facilities that are not yet in

compliance; a schedule for bringing facilities into compliance; and current year and estimated future year costs associated with compliance." H.R. Rep. No. 114-668, at 35.

36. The comprehensive framework enacted by Congress regarding the detention of aliens for removal leads to the conclusion that the federal government has occupied the field. *See Arizona v. United States*, 567 U.S. 387, 401 (2012) ("*Arizona II*"). Where Congress occupies an entire field, as it has in the field of alien detention pending removal, even complementary state regulation is impermissible. Accordingly, Plaintiff's attempt to gain access to a federal facility or obtain federal records to enforce state health and safety standards and requirements is unconstitutional and invalid because it is preempted by Congress's occupation of the entire field of alien detention pending removal.

**E. Federal Obstacle Preemption**

37. As early as *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824), Chief Justice Marshall stated the governing principle—that "acts of the State Legislatures … [which] interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution," are invalid under the Supremacy Clause. *Id.* at 211 (emphasis added). More than 100 years later, Justice Black, after reviewing the precedents, wrote in a similar vein:

> [T]his Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. In the final analysis, . . . [o]ur primary function is to determine whether [a challenged state statute] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Under the doctrine of conflict preemption, "state laws are preempted when they conflict with federal law." *California*, 921 F.3d at 878 (quoting

*Arizona II*, 567 U.S. at 399). This includes cases where "compliance with both federal and state regulations is a physical impossibility," and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 879 (*quoting Arizona II*, 567 U.S. at 399 (internal quotation marks omitted)).

38. Plaintiff's demand that GEO turn over to Plaintiff property of the United States Government to conduct its investigation purportedly to enforce state health and safety standards and requirements presents a direct conflict with the objectives of Congress. Similarly, Plaintiff's attempt to assess and enforce compliance with state-mandated standards or requirements creates an obstacle to the Congressional objective of implementing a uniform set of federal requirements tailored to the unique purposes of federal alien detention. (*See* PBNDS, Preface (noting the purpose of the PBNDS reflects "ICE's ongoing effort to tailor the conditions of immigration detention to its unique purpose.").) Plaintiff's demand for unlimited access to AIPC to investigate ICE's provision of medical care to federal detainees and to enforce state health and safety standards and requirements likewise presents a direct conflict with the objectives of Congress.

* * * * *

39. The existence of a single removable claim allows removal of the entire action. 28 U.S.C. § 1441(c); *Lepucki v. Van Wormer*, 765 F.2d 86, 89 (7th Cir. 1985); *see also Nat'l Audubon Soc'y v. Dep't of Water*, 496 F. Supp. 499, 509 (E.D. Cal. 1980).

40. Notice of this removal has been filed with the state court and provided to all adverse parties by the initial removing defendant pursuant to 28 U.S.C. § 1446(d).

41. In accordance with the time requirements of Fed. R. Civ. P. 81(c), Defendant will answer or present other defenses or objections. Defendant does not waive and, to the contrary, expressly preserves any and all rights and defenses it may assert by motion or otherwise with respect to the action and Complaint.

Dated: August 21, 2026.

Respectfully submitted,

*s/ James N. Boeving*

Frederick R. Yarger
James N. Boeving
William Hauptman
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: yarger@wtotrial.com
boeving@wtotrial.com
hauptman@wtotrial.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on August 21, 2026, I electronically filed the foregoing **THE GEO GROUP, INC.'S NOTICE OF REMOVAL** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

- **Ryan Lorch**
  Ryan.Lorch@coag.gov

- **Nora Q. E. Passamaneck**
  Nora.Passamaneck@coag.gov

*s/ James N. Boeving*